UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY CYRS,

    Plaintiff,

v.

SECRETARY, Department of Veterans Affairs,

    Defendant,

                                                /

Case No. 08-12929

Honorable Patrick J. Duggan

## **OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 16, 2009.

PRESENT:       THE HONORABLE PATRICK J. DUGGAN
                         U.S. DISTRICT COURT JUDGE

This action arises from Plaintiff Nancy Cyrs's ("Plaintiff") employment at the Veterans' Affairs Regional Office ("VARO") in Detroit. Plaintiff worked at the VARO for over 32 years until she went on disability retirement on October 15, 2005. In the year preceding her retirement, Plaintiff alleges that she was subjected to unlawful age, disability, race, and gender discrimination and retaliation. Plaintiff also claims that she was constructively discharged and that Defendant violated the Older Worker Benefits Protection Act ("OWBPA"). Presently before the Court is Defendant's motion for summary judgment. The issues have been fully briefed and the Court dispensed with oral

argument pursuant to Eastern District of Michigan Local Rule 7.1(e)(2). For the reasons set forth below, the Court grants Defendant's motion for summary judgment.

**I. Factual and Procedural Background**

Plaintiff began working at the VARO in January 1973. After holding various positions over the years, Plaintiff began working as a Veterans' Service Representative ("VSR") in 2000. In 2002, Plaintiff was assigned, as a VSR, to the VARO's post-determination team. VSRs in this unit perform various tasks that include sending benefit award letters to veterans, updating records, adding beneficiaries, and entering data to ensure termination of benefits when appropriate. In this position, Plaintiff was paid according to the government's general schedule at grade 10, step 10.

From time to time while working at the VARO, Plaintiff had difficulty meeting productivity goals but she otherwise had no major disciplinary problems. (*See* Def.'s Mot. Exs. 7, 9-11.) In March 2004, Plaintiff faced a number of personal issues—health problems and an ailing mother—that made meeting work expectations particularly difficult. These events prompted her to inquire about the possibility of early retirement. (Def.'s Mot. Ex. 2 at 29-32, Ex. 13; Pl.'s Resp. Ex 16.) At that time, she was informed that retirement was not an available option.

In regard to productivity at the VARO, VSR employees use a software program called ProStar to report the work they complete on a daily basis. ProStar assigns a point value to each completed task and VSRs are required to maintain a certain average point value over time. By December 2004 post-determination team supervisor Charles Moore ("Moore") became concerned about his team's failure, as a whole, to keep up with

2

Veterans' Affairs productivity goals despite the fact that each team member individually reported meeting their productivity requirements.  In response Moore began cross-checking each VSR's ProStar entries with work actually done in 15 to 30 randomly selected claims files.  (Def.'s Mot. Ex. 4.)

Of the ten employees subject to this review, Moore discovered reporting errors by four VSRs, including Plaintiff.  As to the other three, one received a written warning for reporting completed work where no work was done in one of the files reviewed.  Another reported work that was not actually performed on three cases and double or triple reported work on eight other files; this VSR received a reprimand.  The third took excess credits for work on nine cases but also underreported the work she did on other files.  When Moore confronted this VSR, she responded with embarrassment and candor and was ultimately issued a written warning.  (Def.'s Mot. Ex. 4; Def.'s Reply Ex. 10.)

Moore's review of Plaintiff's work caused him added concern.  Of 18 files he pulled, Moore did not see any of the reported work reflected in 16 of the files.  Moore then decided to pull an additional 20 files; of those Plaintiff had completed, but also double reported, work on three files.  Moore concluded that, had Plaintiff accurately recorded her work in ProStar, she would not have met her productivity requirements.  Based on these findings, Moore sent a memorandum to Darryl Brady ("Brady"), the Manager of the VARO Servicing Center, on Jaunuary 13, 2005, proposing Plaintiff's removal.  On February 3, 2005, Plaintiff's union representative, Audrey Harrington ("Harrington"), sent a letter to Brady indicating that Plaintiff had completed all the work for which she took credit, even if the file failed to contain a record thereof.  (Pl.'s Resp.

3

Ex. 5.) Nonetheless, Brady agreed and, on February 10, 2005, issued a memorandum proposing Plaintiff's removal to the VARO director, Keith Thompson ("Thompson"). Plaintiff received a copy of the memorandum and was given an opportunity to reply before Thompson made a final decision. (Def.'s Mot. Ex. 17.)

Plaintiff responded to Brady's memorandum on February 23, 2005.[1] Plaintiff asserted that she had not falsified any of her ProStar entries and that in some of the cases she had simply reviewed the file without making an annotation reflecting that fact. Additionally, Plaintiff claimed that 17 of the cases were part of a Social Security Death Match Project ("Death Match cases") which did not require that she physically obtain or annotate the files. Plaintiff offered to submit copies of "M-11 screens"[2] in support of this argument. Plaintiff went on to speculate that Moore had targeted her because of a complaint she made on January 12, 2005, regarding his assistant removing files from her desk and modifying Plaintiff's ProStar entries. Plaintiff concluded by noting that she had requested retirement in March 2004 and asked that her medical difficulties be considered as partial explanation for her lacking productivity. (Def.'s Mot. Ex. 13.) Harrington also sent a letter to Thompson on February 23, 2005, stating that Plaintiff properly took credit for reviewing cases even where no other action was necessary. (Pl.'s Resp. Ex 9.)

In the month that followed Plaintiff's response, Plaintiff, Harrington, Thompson, and Human Resources Specialist Michele Blunk met on several occasions to discuss

---

[1] Meanwhile, Plaintiff went on a medical leave of absence because of problems with back pain, depression, and elevated blood pressure effective February 10, 2005.

[2] Plaintiff does not explain what an M-11 screen is.

4

Plaintiff's proposed removal. At a meeting on or around March 29, 2005, Thompson presented Plaintiff with the choice between termination and a last chance agreement that would allow her to remain at the VARO after taking a demotion and pay reduction. Plaintiff requested that Thompson reconsider, reassign her to a different unit on the post-determination team, or allow her to retire. When Thompson reiterated that Plaintiff had only two choices, he was informed that Plaintiff had filed an EEO complaint on March 28, 2005. Thompson then indicated that he would think about the situation. (Def.'s Mot. Ex. 2 at 93-95, Ex. 21.)

At the end of that same meeting, Plaintiff requested that she be allowed to straighten up her desk.[3] After doing so, Plaintiff handed in approximately 150 to 200 pieces of "mail"—various documents received from veterans regarding their benefits claims—that were at her desk. These documents included, among other things, benefits applications for widows and children of veterans and applications for burial benefits. More than 100 of the documents predated 2004 and some were from 2002 or earlier. At least one veteran passed away before his 2002 claim for pension benefits was processed. (Def.'s Mot. Ex. 2 at 95-98, Ex. 4, Ex. 6, Ex. 22.)

In light of the foregoing, Brady amended and reissued his removal memorandum on April 5, 2005, to include the mail as a reason for Plaintiff's termination. (Def.'s Mot. Ex. 22.) On April 18, 2005, Plaintiff submitted an application for immediate retirement on the basis of disability with the Office of Personnel Management ("OPM"). (Def.'s Mot.

---

[3]Plaintiff remained on medical leave at the time of the March 29, 2005, meeting.

5

Exs. 26-27.)  Then, on April 19, 2005, Plaintiff responded to Brady's amended memorandum.  Therein Plaintiff reiterated her prior explanation of the ProStar entries and complained that Brady had failed to use progressive discipline to deal with the situation.  As to the mail, Plaintiff acknowledged that her desk was "out of control," apologized for how veterans had been adversely affected, offered to work unpaid weekends to resolve any pending issues, and asserted that her medical difficulties had been the root of the problem.  (Def.'s Mot. Ex. 12.)

On April 27, 2005, Thompson issued a memorandum directing that Plaintiff's employment be terminated.  Thompson indicated that he had considered Plaintiff's explanations for her deficiencies but found them either unpersuasive or insufficient.  (Def.'s Mot. Ex. 6.)  The effective date of Plaintiff's termination, however, was held in abeyance to give Plaintiff the opportunity to sign the last chance agreement.  At that time, the last chance agreement was modified to include a statement that the agreement represented a resolution of Plaintiff's pending EEO claim.  At a meeting on April 29, 2005, Plaintiff signed the agreement.  (Def.'s Mot. Ex. 24.)

Pursuant to the last chance agreement, Plaintiff was demoted to the position of claims assistant/intake specialist with a salary at general schedule grade 7, step 10.  Plaintiff also agreed to accept disability retirement if her prior application was granted by OPM and, if not, to retire voluntarily at the earliest possible date.[4]  If Plaintiff failed to comply with the agreement, Thompson's removal would go into effect.  (Def.'s Mot. Ex.

---

[4]Plaintiff was eligible for retirement on March 3, 2006.

6

24.) As required by the agreement, Plaintiff withdrew her pending EEO claim and began working in her new position on May 6, 2005.[5] Upon approval by OPM, Plaintiff went on disability retirement effective October 15, 2005. (Def.'s Mot. Ex. 31.)

On November 18, 2005, Plaintiff made a second contact with the EEO. (Def.'s Mot. Ex. 32.) On January 4, 2006, she filed a formal EEO complaint alleging retaliation and age, gender, race, and disability discrimination. (Def.'s Mot. Ex. 33.) After receiving a right to sue letter, Plaintiff filed the present lawsuit on July 9, 2008. Plaintiff asserts seven counts in her complaint: (I) age discrimination and harassment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621; (II) disability discrimination and harassment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101;[6] (III) race discrimination and harassment in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e-2; (IV) gender discrimination and harassment in violation of Title VII; (V) violation of the OWBPA, 29 U.S.C. § 626(f); (VI) retaliation in violation of Title VII; and (VII) constructive discharge. On May 15, 2009, Defendant filed a motion for summary judgment as to all claims.

**II. Standard of Review**

Summary judgment is appropriate only when there is no genuine issue as to any

---

[5] This was Plaintiff's first day back to work after her medical leave of absence.

[6] Although Plaintiff cites the ADA for her disability claim, the Court construes her claim as one made under the Rehabilitation Act, 29 U.S.C. § 701, because she is suing a federal agency. Employment discrimination claims brought under the Rehabilitation Act are governed by the standards contained in the ADA. 29 U.S.C. § 794(d).

7

material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

### III. Employment Discrimination and Retaliation (Claims I-IV and VI)

Defendant presents several challenges to Plaintiff's discrimination and retaliation claims. As an initial matter, Defendant alleges that these claims are untimely. In regard

to the merits of the claims, Defendant argues that Plaintiff cannot establish a prima facie case of discrimination or retaliation. Finally, Defendant maintains that the employment decisions at issue in this case were justified by non-discriminatory, non-pretextual reasons. The Court considers these arguments in turn.

## A. Timeliness

Before filing her employment discrimination and retaliation claims in federal court, Plaintiff is required to meet certain administrative exhaustion requirements. *See Hunter v. Secretary of U.S. Army*, 565 F.3d 986, 993 (6th Cir. 2009). With respect to the retaliation and disability, race, and gender discrimination claims, federal regulation requires Plaintiff to "initiate contact with [an EEO] [c]ounselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1); *see also* 29 U.S.C. § 794(d) (making the standards of the ADA applicable to employment discrimination claims brought against the federal government under the Rehabilitation Act); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009) (applying time limits to claims of retaliation).[7] Meanwhile, "the ADEA provides two alternative routes for pursuing a claim of age discrimination." *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5, 111 S.Ct. 1562, 1566 (1991). "A federal employee may invoke the EEOC's administrative process set forth in

---

[7]Plaintiff asserts that retaliation claims are generally excepted from the filing requirements set forth in the federal regulations. (Pl.'s Resp. at 18-19.) That exception does not apply, however, to cases like this one where the allegedly retaliatory conduct occurs before the plaintiff files an EEOC complaint. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998).

29 C.F.R. § 1614 by seeking EEO counseling within 45 days" or "a federal employee may directly sue in federal district court so long as the employee gives the EEOC notice of an intent to sue within 180 days of the allegedly discriminatory act and then waits 30 days before filing the action." *Hunter*, 565 F.3d at 993. Under these standards, Plaintiff's discrimination and retaliation claims are untimely.

Based on Plaintiff's November 18, 2005, EEO contact, the only allegedly discriminatory act that took place within the relevant time periods is Plaintiff's October 15, 2005, disability retirement. The other allegedly discriminatory actions, including Plaintiff's demotion and reduction in pay grade, all took place on or before May 6, 2005—more than 180 days before Plaintiff's November 18, 2005, EEO contact. On the facts of this case, however, Plaintiff's disability retirement does not amount to a discriminatory or retaliatory employment act.

Plaintiff's discrimination and retaliation claims require proof of an adverse employment action. *See Thompson v. N. Am. Stainless, LP*, 567 F.3d 804, 808-09 (6th Cir. 2009) (Title VII retaliation); *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (Title VII discrimination); *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007) (Rehabilitation Act); *Mitchell v Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004) (ADEA). The adverse action must be materially adverse such that the employer's actions amount to a change in the terms and conditions of employment. *Michael v. Caterpillar Financial. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). To qualify as materially adverse:

> [the] change in the terms and conditions of employment must be more

> disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999) (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)).[8] Although forced or early retirement could constitute adverse employment action in some cases, the unique circumstances of this case undermine Plaintiff's claim that her disability retirement was "adverse."

The record evidence in this case suggests that Plaintiff wanted to retire. Plaintiff had inquired about the possibility of retirement as early as 2004 and actually sought retirement as an accommodation for her alleged disabilities. (Def.'s Mot Ex. 21; Pl.'s Resp. Ex. 16, 19.) And although the Last Chance Agreement required that Plaintiff accept disability retirement at the earliest date approved by the OPM, Plaintiff had applied, of her own accord, for disability retirement over a week before signing the Last Chance Agreement. (Def.'s Mot. Ex. 24, 26-27.) As defined by Black's Law Dictionary, to be "adverse" is to be "opposed" or "contrary" or "in resistance or opposition to a claim, application, or proceeding." Black's Law Dictionary 53 (6th ed. 1990). Given Plaintiff's

---

[8]The definition of "adverse employment action" is broadened in the context of a Title VII retaliation claim to include "conduct that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008) (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415 (2006)). That difference does not change the Court's analysis in this case.

11

requests and application for retirement, her disability retirement simply cannot be viewed as an "adverse" employment action for purposes of making her November 18, 2005, EEO contact timely.[9] Therefore, Plaintiff's employment discrimination and retaliation claims are barred.[10]

---

[9]Plaintiff asserts that she first requested that management transfer her to the phone or triage units in the VARO to accommodate her disabilities. (Def.'s Mot. Ex. 1 at 8, Ex. 2 at 28-32.) Plaintiff claims to have requested retirement as an accommodation only after management denied her transfer requests for discriminatory reasons. (*Id.*) In this way, Plaintiff seeks to avoid the conclusion that she wanted to retire. The record evidence, however, fails to support Plaintiff's argument.

In the context of disability discrimination claims, Plaintiff has the burden of proving both that she requested accommodation for her disabilities and that the requested accommodation was reasonable. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008). "[W]here the plaintiff claims that she should have been accommodated by reassignment to another position, . . . . the plaintiff must identify a vacant, funded position for which she was qualified, with or without accommodation, that existed at the time of her request for reassignment." *Willard v. Potter*, 264 Fed. Appx. 485, 487-88 (6th Cir. 2008). There is no such evidence in this case. Because Plaintiff failed to identify any vacant positions to which she could have been transferred, there is no basis for the conclusion that management's refusal to transfer her amounted to discrimination or that Plaintiff's request for retirement was merely the product of discriminatory conduct. The Court therefore considers Plaintiff's requests and application for retirement to have been made voluntarily.

[10]Plaintiff's attempt to convert her discrimination claims to hostile work environment claims in order to invoke the continuing wrongs doctrine is unavailing. (*See* Pl.'s Resp. at 17-19.) A hostile work environment claim may exist where harassment unreasonably interferes with an employee's work performance by creating a hostile, offensive, or intimidating work environment. *See Thornton v. Federal Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008). An EEO contact is considered timely in the context of a hostile work environment claim so long as it is filed within 45 days of the last act contributing to the claim. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S. Ct. 2061, 2074 (2002). If Plaintiff's disability retirement was viewed as part of a hostile work environment claim, then Plaintiff's claims would be timely.

In this case, however, the record evidence fails to support a finding that Plaintiff experienced an objectively or subjectively hostile work environment. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22-23, 114 S. Ct. 367, 371 (1993). Although Plaintiff references alleged comments regarding older workers made by members of management

12

**B. Prima Facie Case**

Even if Plaintiff's discrimination and retaliation claims are considered timely, Defendant argues that they are subject to dismissal because Plaintiff failed to establish a prima facie case of discrimination or retaliation. Absent direct evidence,[11] a plaintiff must establish an inference of unlawful conduct by proving a prima facie case of discrimination or retaliation. *See, e.g.*, *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). In this case, Plaintiff has failed to present sufficient evidence for at least one element of each of her claims.

To establish a prima facie case of discrimination—whether age, disability, race, or gender—Plaintiff must demonstrate, among other things, that she was either replaced by a

---

in the Department of Veterans Affairs in support of such a claim, (Pl.'s Resp. at 12-16), there is no evidence that these comments were made while Plaintiff was employed at the VARO or, if they were, that Plaintiff had knowledge of or was offended by those comments. Furthermore, merely offensive comments are insufficient to support hostile work environment claims. *See Barrett*, 556 F.3d at 515. In the end, Plaintiff seeks to challenge a number of discrete acts—accommodation denials, her demotion, and her reduction in pay—that she feels were discriminatory; there is no evidence that any of these acts were part of a hostile work environment. *See Morgan*, 536 U.S. at 113-14; *see also Hunter*, 565 F.3d at 993-94 (rejecting the plaintiff's attempt to change a disparate treatment claim into a hostile work environment claim). Therefore, the continuing wrongs doctrine is inapplicable.

Finally, the timeliness requirement can also be avoided by waiver, estoppel, or equitable tolling. *McFarland v. Henderson*, 307 F.3d 402, 405 (6th Cir. 2002). Plaintiff does not argue for nor does the Court find that any of these exceptions are relevant to this case.

[11]"Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful retaliation [or discrimination] was a motivating factor in the employer's action." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 543-44 (6th Cir. 2008). Plaintiff did not submit any direct evidence of discrimination or retaliation.

person outside the protected class or treated differently than similarly situated non-protected employees. *See Thompson*, 567 F.3d at 808-09 (Title VII retaliation); *White*, 533 F.3d at 391 (Title VII discrimination); *Jones*, 488 F.3d at 404 (Rehabilitation Act); *Mitchell*, 389 F.3d at 181 (ADEA). There is no evidence in this case that Plaintiff was replaced, let alone by an individual outside of the protected classes claimed by Plaintiff. Therefore, Plaintiff must show that she was treated differently than similarly situated non-protected employees.

There is no evidence in this case that Plaintiff was treated differently than her similarly situated coworkers. Similarly situated individuals are those who "have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Jones*, 488 F.3d at 405. In this case Moore's review of Pro-Star entries revealed problems with four out of ten VSR employees. (Def.'s Mot. Ex. 4.) These problems ranged in severity and the discipline used in response mirrored that range. (*Id.*)

Plaintiff argues, however, that discrimination can be inferred from the fact that one of the other VSRs—a 25 year-old, white female[12]—received only a written warning for her conduct. The VSR to which Plaintiff refers had taken too much credit for the work she did on nine cases but had also failed to take enough credit on other files and

---

[12]Comparison with this coworker does not support Plaintiff's gender discrimination claim. In fact, Plaintiff presents no argument in response to Defendant's request for summary judgment on the gender discrimination claim.

14

responded with embarrassment when confronted with the problems. (Def.'s Reply Ex. 10.) Plaintiff, meanwhile, allegedly misreported work on nearly 40 cases and each of those misreports worked to Plaintiff's advantage in terms of inflating her work credits. (Def.'s Mot. Ex. 22.) Even disregarding the 17 cases Plaintiff alleges were properly handled under the Death Match protocol, Plaintiff still committed about twice as many errors as her coworkers. And all this is before considering the alleged mail issues, allegations in which Plaintiff appears to admit at least some wrongdoing or oversight. (*See* Def.'s Mot. Ex. 12 (Plaintiff offering to work unpaid weekends to catch up and correct her mistakes and also apologizing for the harm caused to veterans and their families whose claims were not handled in a timely manner).) There is no record evidence that other VSRs made as many Pro-Star errors or retained years-old mail without acting on it to the detriment of veterans and their families. Consequently, Plaintiff cannot show that she was treated differently than similarly situated non-protected coworkers and Defendant is entitled to summary judgment on Plaintiff's claims of age, disability, race, and gender discrimination.

As part of a prima facie case of retaliation, Plaintiff must establish that Defendant committed an adverse employment action *after* learning that she engaged in protected activity. *See Niswander*, 529 F.3d at 720. By the time Defendant became aware of Plaintiff's March 29, 2005, EEO contact, Defendant had already presented Plaintiff with the choice between termination and a last chance agreement. (Def.'s Mot. Ex. 2 at 93-95.) After learning of Plaintiff's EEO contact, Thompson did modify the proposed last chance agreement to include a clause indicating that the agreement resolved Plaintiff's

15

then-pending discrimination claims.[13]  (*See* Def.'s Mot. Ex. 24; Pl.'s Resp. at 25.)  That modification, in an of itself, was not an adverse "employment action" and federal regulations allow parties to come to such agreements while EEO claims remain pending.  *See* 29 C.F.R. § 1614.504(a).  Ultimately, Plaintiff faced the same adverse employment actions—termination or demotion—both before and after Defendant learned of her EEO contact.  Therefore, Plaintiff cannot establish one of the elements of her prima facie case and Defendant is entitled to summary judgment.

**IV. OWBPA (Claim V)**

In her fifth claim, Plaintiff alleges that, to the extent the last chance agreement purports to waive her age discrimination claim, it violates the OWBPA.  A purported waiver of age discrimination claims that fails to comply with the OWBPA is invalid.  *See* 29 U.S.C. § 626(f)(1).  Beyond invalidation, however, "the OWBPA itself contains no sanction for noncompliance.  In other words, although employers are charged with writing valid releases, there is no automatic penalty if they fail to do so."  *Howlett v. Holiday Inns, Inc.*, 120 F. 3d 598, 602 (6th Cir. 2007).  In this case, Defendant does not rely on the last chance agreement as a defense to Plaintiff's age discrimination claim.  The validity of any waiver within the agreement is therefore irrelevant.  Because the OWBPA fails to provide for relief other than invalidation, this claim is moot and Defendant is entitled to summary judgment.

---

[13] It is only natural that this modification occurred after Thompson learned of Plaintiff's EEO contact.  Before Thompson knew of the contact, he would have had no reason to include such a clause in the agreement.

16

## V. Constructive Discharge

Plaintiff's last claim for constructive discharge fails to differ materially from her other discrimination and retaliation claims. In this claim, Plaintiff asserts that Defendant's discriminatory actions culminated in her forced retirement in October 2005. This is really just another way of claiming that the disability retirement amounted to an adverse employment action motivated by unlawful discrimination. *See Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002) (identifying "constructive discharge" as a form of adverse action). As discussed above, however, Plaintiff's disability retirement was not "adverse" in this case. Therefore, Defendant is entitled to summary judgment on this claim.

## VI. Conclusion

Defendant is entitled to summary judgment in this case. Plaintiff's discrimination and retaliation claims are time barred and, even if they were not, Plaintiff has failed to establish a prima facie case of discrimination or retaliation. Plaintiff's remaining claims for an OWBPA and constructive discharge fail to present separate grounds for relief.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment is **GRANTED**.

A judgment consistent with this opinion will issue.

s/PATRICK J. DUGGAN  
UNITED STATES DISTRICT JUDGE

Copies to:
Herbert Sanders, Esq.
Theresa M. Urbanic, A.U.S.A.